UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------ X
UNITED STATES OF AMERICA,        :
                                 :
      -against-                  :
                                 :
DIONYSIUS FIUMANO,               :
        a/k/a "D"                :
                                 :
                    Defendant.   :
------------------------------ X
```

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____               │
│ DATE FILED: 04/25/2016               │
└─────────────────────────────────────┘
```

No. S3 14 Cr. 518 (JFK)
**OPINION & ORDER**

APPEARANCES
FOR THE UNITED STATES OF AMERICA
 Preet Bharara, Esq.
 United States Attorney for the
 Southern District of New York

 Patrick Egan, Esq.
 Edward A. Imperatore, Esq.
 Assistant United States Attorneys for the
 Southern District of New York

FOR DEFENDANT DIONYSIUS FIUMANO
 H. Dean Steward, Esq.
 H. DEAN STEWARD, A.P.C.

**JOHN F. KEENAN, United States District Judge:**

  The Defendant Dionysius Fiumano ("Fiumano") is charged by superseding indictment with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 and one count of wire fraud in violation of 18 U.S.C. §§ 1343, 2.  The Government moves in limine seeking to introduce or preclude certain evidence.  For the reasons below, the Government's motion is granted in part and the Court reserves its decision in part.

## I.  Background

The superseding indictment (the "Indictment") charges that, from at least January 2011 through May 2014, Fiumano, while working at a telemarketing company referred to as PMG, participated in a scheme to defraud homeowners by causing misrepresentations to be made by telephone and e-mail to victims to induce them to pay upfront fees for purported mortgage modification assistance. (Indictment ¶¶ 1, 3 (filed Mar. 16, 2016), ECF No. 87; Mem. of Law in Support of the Gov't's Mot. in Lim. 3 (filed Apr. 8, 2016), ECF No. 91 [hereinafter "Mem."])

The Government intends to present evidence that Fiumano engaged in a purportedly similar mortgage modification fraud scheme during the period prior to the conspiracy charged in the Indictment. (Mem. 1.)  The Government proffers that a witness who it expects will testify at trial ("CW-1") worked with Fiumano at PMG and previously at a company known as Clearblue. (Id. at 5.)  The Government expects CW-1 to testify that Clearblue engaged in a mortgage modification fraud scheme substantially similar to the charged PMG scheme. (Id.)  It also expects CW-1 to testify that when CW-1 left Clearblue, he actively recruited Fiumano because of Fiumano's reputation as an effective and high-earning sales representative and the relationship of trust fostered between CW-1 and Fiumano during the Clearblue scheme. (Id. at 5-6.)  Once Fiumano joined PMG,

the Federal Trade Commission ("FTC") brought a civil action against Clearblue for abusive sales practices, and the Government expects CW-1 to testify that Fiumano and CW-1 discussed the FTC action. (Id. at 6.)  The Defendant points out that Clearblue merged with a company named Apex Solutions ("Apex") in 2011, and that the FTC brought action against Apex 20 months after Fiumano left Clearblue. (Def.'s Opp'n to Gov't's Mot. in Lim. 3 [hereinafter "Opp'n"].)

The Government also intends to present evidence that, while Fiumano was engaged in the charged fraud scheme, he threatened to expose others involved in the scheme in order to protect his job.  The Government proffers that it expects CW-1 to testify that, when CW-1 and another PMG manager learned of an alleged sexual assault by Fiumano on another employee, they advised Fiumano he might be terminated. (Mem. 13.)  In response, Fiumano purportedly confronted CW-1 and the other manager and threatened to "take the company down," which CW-1 understood to mean that Fiumano would expose the fraud at PMG to the authorities if he were fired. (Id. at 12.)  The Defendant suggests that the "take the company down" statement is subject to various innocuous meanings including the Defendant joining a rival company or exposing employment law irregularities or noncompany crimes committed by the owners. (Opp'n 4.)  Moreover, the Defendant asserts that the sexual assault never occurred and cites the

lack of a lawsuit, criminal complaint, or employment action substantiating it. (Id.)

Recognizing the potentially prejudicial nature of the sexual assault, the Government proffers that it intends to characterize the incident as an "interpersonal issue" between Fiumano and the other employee. (Mem. 12-13.) Fiumano counters that, even with the Government's proffered solution, the evidence remains too inflammatory to be admitted under Federal Rule of Evidence 403. (Opp'n 4.)

Finally, the Government seeks to preclude Fiumano from arguing that the contents of certain contracts negate fraudulent misrepresentations made at Fiumano's direction or with his knowledge and to preclude Fiumano from presenting evidence of nonfraudulent work that he performed. (Mem. 15-21.) Fiumano states that he does not plan to argue that the contracts are a complete defense, but that he should be able to review the contents with the complaining witnesses and the jury should be allowed to give the weight they feel appropriate to those documents. (Opp'n 5.) Finally, Fiumano asks the Court to reserve decision on what may qualify as his so-called "good acts" until trial because "the government tries to paint the issue with too broad a brush." (Id.)

## II.  Analysis

### A.  Legal Standard

A district court's inherent authority to manage the course of trials includes the power to rule on motions in limine. Luce v. United States, 469 U.S. 38, 41 n.4 (1984).  A motion in limine "aid[s] the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996) (quoting Banque Hypothecaire du Canton de Geneve v. Union Mines, 652 F. Supp. 1400, 1401 (D. Md. 1987)).

On a motion in limine, the movant bears the burden of establishing the admissibility of the evidence. United States v. Pugh, No. 15 Cr. 116(NGG), --- F. Supp. 3d ----, 2016 WL 627347, at *2 (E.D.N.Y. Feb. 12, 2016).  Even where this burden is met in limine, the ruling is subject to change when the case unfolds, either because the actual evidence changes from that proffered by the movant or, even when nothing unexpected occurs, the court alters a previous ruling as an exercise of sound judicial discretion. Luce, 469 U.S. at 41-42.

### B.  Elements of the Charged Crime

To prove wire fraud, the Government must show (1) a scheme to defraud victims (2) by obtaining their money or property

(3) furthered by the use of interstate wires. United States v. McGinn, 787 F.3d 116, 122 (2d Cir. 2015); see also 18 U.S.C. § 1343.

As to the first element, the Government must show (i) the existence of a scheme to defraud; (ii) the requisite scienter (or fraudulent intent) on the part of the defendant; and (iii) the materiality of the misrepresentations. United States v. Autuori, 212 F.3d 105, 115 (2d Cir. 2000).

Fraudulent intent includes both "'a conscious knowing intent to defraud,' and that some harm or injury to the property rights of the victim was contemplated." McGinn, 787 F.3d at 122 (quoting United States v. Guadagna, 183 F.3d 122, 129 (2d Cir. 1999)).

"[A] false statement is material if it has 'a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it is addressed.'" Neder v. United States, 527 U.S. 1, 16 (1999) (second alteration in original) (quoting United States v. Gaudin, 515 U.S. 506, 509 (1995)). The natural tendency test "focuses on the potential effect of the false statement when it is made rather than on the false statement's actual effect after it is discovered." United States ex rel. Anti-Discrimination Ctr. of Metro N.Y., Inc. v. Westchester Cty., N.Y., 668 F. Supp. 2d 548, 569 (S.D.N.Y. 2009)

(emphasis omitted) (quoting United States v. Bourseau, 531 F.3d
1159, 1171 (9th Cir. 2008)).

### C. Application

#### 1. The Evidence That the Government Seeks to Present

The Government argues that evidence of Fiumano's prior
mortgage modification fraud and of Fiumano's threat to expose
the charged fraud is admissible because it is direct evidence of
the charged crimes or, alternatively, it is presented for a
permissible purpose under Federal Rule of Evidence 404(b).  The
Government offers as a second alternative for admitting the
prior mortgage modification fraud evidence that such evidence is
part of its required witness disclosures under Giglio v. United
States, 405 U.S. 150 (1972).

#### a. The Evidence of Fiumano's Threat to Expose the Charged Fraud Is Direct Evidence of the Charged Crime, But the Evidence of Prior Mortgage Modification Is Not

Federal Rule of Evidence 404(b)(1) precludes the admission
of evidence of "a crime, wrong, or other act . . . to prove a
person's character in order to show that on a particular
occasion the person acted in accordance with the character." FED.
R. EVID. 404(b)(1).  However, uncharged criminal activity is not
considered "other acts" evidence under Rule 404(b) "if it arose
out of the same transaction or series of transactions as the
charged offense, if it is inextricably intertwined with the
evidence regarding the charged offense, or if it is necessary to

7

complete the story of the crime on trial." U.S. v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000) (quoting United States v. Gonzalez, 110 F.3d 936, 942 (2d Cir. 1997)).  Evidence fitting within one of these three categories is considered direct evidence and Rule 404 is not applicable.  Accordingly, with regards to such evidence, the Government need not comply with Rule 404(b)'s notice requirement and the Court is not required to provide a limiting instruction to the jury. United States v. Nektalov, 325 F. Supp. 2d 367, 372 (S.D.N.Y. 2004).  Because direct evidence does not carry with it Rule 404(b)'s safeguards, analysis under Rule 404(b) is appropriate whenever "it is not manifestly clear that the evidence in question is intrinsic proof of the charged crime." Id.

### i. Fiumano's Alleged Threat to "Take the Company Down"

As proffered by the Government, Fiumano's threat to "take the company down" is intrinsic proof of the charged crime because it is inextricably intertwined with the evidence offered to prove the charged offense.  The Government intends to offer the evidence of Fiumano's threat as evidence that he was conscious of his own guilt with regards to the fraud at PMG. (Mem. 13.)  In other words, the Government contends that Fiumano's threat to CW-1 contains an admission of the charged crime.  "When a statement of hypothetical harm to a third person is thus inextricably linked with the evidence offered to prove

the charged offense, it is admissible without reference to Rule 404(b)." United States v. Quinones, 511 F.3d 289, 309 (2d Cir. 2007).

The Defendant asserts that the alleged threat is irrelevant because it is "subject to many interpretations other than knowledge of criminal conduct." (Opp'n 4.)  While this may be true, the fact "[t]hat the statement might be construed more innocently [i]s a matter properly addressed through cross-examination and argument to the jury, not a ground for excluding the evidence as irrelevant." United States v. Abu-Jihaad, 630 F.3d 102, 132 (2d Cir. 2010).

The same is true for the Defendant's contention that the alleged sexual assault never occurred.  The Second Circuit has characterized the test for relevance under Federal Rule of Evidence 401 as a "very low standard." United States v. White, 692 F.3d 235, 246 (2d Cir. 2012) (quoting United States v. Al-Moayad, 545 F.3d 139, 176 (2d Cir. 2008)).  "To be relevant, evidence need not be sufficient by itself to prove a fact in issue, much less to prove it beyond a reasonable doubt." Abu-Jihaad, 630 F.3d at 132.  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." FED. R. EVID. 401.  The Government proffers that Fiumano's statement itself—and not the context

that gave rise to it—permits the inference that he was aware of the illegality of the mortgage modification scheme he was involved in. This inference makes it more probable that Fiumano acted with a conscious knowing intent to defraud—a fact of consequence here. Accordingly, unless its probative value is substantially outweighed by a danger identified in Rule 403, the evidence should be admitted.

"Rule 403 favors admissibility: evidence is only excluded when its probative value is <u>substantially</u> <u>outweighed</u> by . . . prejudice." <u>White</u>, 692 F.3d at 247. Fiumano does not challenge the statement itself but, instead, argues that the inflammatory nature of facts leading up to his alleged threat—even if the Government substitutes "interpersonal issue" for the alleged sexual assault—creates unfair prejudice to him that substantially outweighs the probative value of the statement. Unfair prejudice "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." <u>Old Chief v. United States</u>, 519 U.S. 172, 180 (1997). "[W]hat counts as the Rule 403 'probative value' of an item of evidence, as distinct from its Rule 401 'relevance,' may be calculated by comparing evidentiary alternatives." <u>Id.</u> at 184. Here, the probative value of the alleged threat is high because the Government proffers that it permits an inference of Fiumano's

fraudulent intent.  The potential unfair prejudice arises when
the alleged threat is placed in context, i.e., that it arose in
response to Fiumano's threatened termination over the sexual
assault of another employee.  Allegations that Fiumano committed
a sexual assault against another employee could potentially lure
the factfinder into declaring guilt on a ground different from
proof specific to the offense charged.  Recognizing this, the
Government suggests an evidentiary alternative:  characterizing
the sexual assault as simply an "interpersonal issue."  The
Court is persuaded that this sufficiently defangs the
potentially prejudicial context of the alleged threat while
providing the prosecution with the evidentiary depth necessary
to tell a continuous story. See Old Chief, 519 U.S. at 190.

     In sum, the Government is permitted to offer evidence of
the alleged threat as intrinsic evidence because it is
inextricably intertwined with the charged crime.  Weighing the
probative value of the alleged threat's context against its
potential prejudice, the Government is limited to describing the
conflict that led to the alleged threat by substituting
"interpersonal issue" for the alleged sexual assault.

     **ii.  Fiumano's Prior Mortgage Modification Fraud Scheme**

     By contrast, the prior mortgage modification fraud scheme
does not fit within any of the three categories that would
remove it from Rule 404(b).  The Government proffers a

11

substantially similar but entirely separate series of
transactions that are neither inextricably intertwined with the
charged crime or necessary to complete the story of the charged
crime.  Rather the prior mortgage modification fraud scheme
informs the jury of the background of the conspiracy charged and
helps explain to the jury how the illegal relationship between
participants in the crime developed.  As discussed below, these
purposes are proper under the Second Circuit's "inclusionary"
approach to Rule 404(b), but cannot remove the evidence from the
Rule 404(b) analysis altogether.

### b.   The Evidence of Fiumano's Prior Mortgage Modification Is Admissible Under Federal Rule of Evidence 404(b)

Rule 404(b)(1) prohibits the use of a crime, wrong, or
other act as evidence of a defendant's propensity, but Rule
404(b)(2) permits such evidence "for another purpose, such as
proving motive, opportunity, intent, preparation, plan,
knowledge, identity, absence of mistake, or lack of accident."
FED. R. CIV. P. 404(b)(2).  The Second Circuit takes an
"inclusionary" approach to Rule 404(b), under which other crimes
evidence "is admissible for any purpose other than to show the
defendant's criminal propensity." United States v. McCallum, 584
F.3d 471, 475 (2d Cir. 2009) (quoting United States v. Paulino,
445 F.3d 211, 221 (2d Cir. 2006)).  "Yet this inclusionary
approach does not invite the government 'to offer, carte

blanche, any prior act of the defendant in the same category of crime.'" Id. (quoting United States v. Garcia, 291 F.3d 127, 137 (2d Cir. 2002)).  Instead, when the evidence is offered for the purpose of establishing knowledge or intent, the Government must "identify a similarity or connection between the two acts that makes the prior act relevant to establishing knowledge of the current act." Id. (quoting Garcia, 291 F.3d at 137).

The standards for assessing admissibility under Rule 404(b) are well established. United States v. Pitre, 960 F.2d 1112, 1119 (2d Cir. 1992).  First, the court must determine whether the proponent offers the evidence for a proper purpose. Id.  If so, the court must determine if the evidence is relevant to an issue in that case and, if relevant, whether the probative value is substantially outweighed by the danger of unfair prejudice. Id.  Finally, upon request, the court must give an appropriate limiting instruction to the jury. Id.

The Government proffers that Fiumano participated in a substantially similar mortgage modification fraud scheme while working at Clearblue and that, after CW-1 recruited him to join PMG, he and CW-1 discussed the FTC's investigation of their prior company. (Mem. 5-6.)  Once at PMG, the Government proffers that Fiumano directed sales representatives to make substantially the same misrepresentations to consumers that were made by representatives of Clearblue, recruited Clearblue

13

representatives to join PMG, and took and adapted Clearblue caller scripts containing misrepresentations about purported mortgage modifications services for use at PMG. (Id. at 6.)

The Government contends that this evidence "helps explain how the fraud charged in this case at PMG came into existence and proceeded so seamlessly, and how the relationship between CW-1 and the defendant came into being and developed." (Id. at 9.)  The Government also contends that it will offer this evidence to show (1) Fiumano "knew how to perpetrate the fraud charged in the Indictment," (2) that, when he joined PMG, he shared the same intent and plan as he had at Clearblue—"to convince consumers through misrepresentations to pay up-front fees, which ultimately fueled the commissions he and others earned," and (3) absence of mistake or lack of accident to rebut any argument that Fiumano may advance that "PMG was no more than a failed, good-faith business venture." (Id. at 10-11.)

Under the Second Circuit's inclusionary approach to Rule 404(b), "[o]ne legitimate purpose for presenting evidence of extrinsic acts is to explain how a criminal relationship developed; this sort of proof furnishes admissible background information in a conspiracy case.  Such proof may also be used to help the jury understand the basis for the co-conspirators' relationship of mutual trust." United States v. Pipola, 83 F.3d 556, 566 (2d Cir. 1996) (citation omitted); accord Pitre, 960

F.2d at 1119 ("Prior act evidence may be admitted to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between participants in the crime developed.").

The Court is persuaded that evidence of the Clearblue mortgage modification scheme is offered for a proper purpose because it will help explain to the jury the relationship of trust between Fiumano and CW-1 and explain the background of the conspiracy charged.  Moreover, since the Government asserts that evidence will also help to prove knowledge or intent, the Government must show a similarity between the Clearblue mortgage modification fraud and the charged PMG fraud. McCallum, 584 F.3d at 475.  The Government's proffer establishes this connection by detailing how each mortgage modification scheme shared participants, plans, and scripts.

Even if offered for a proper purpose, the prior act evidence must be relevant and may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.  The Defendant contends that the potential that the jury may use this conduct as impermissible propensity evidence far outweighs any probative value it may have. (Opp'n 3-4.)

First, the prior mortgage modification scheme evidence is relevant to the issue of knowledge or intent, which the

15

Government must prove as an element of both charged counts.  As proffered, this evidence has a tendency to make more probable that Fiumano knew how to implement the scheme, intended to defraud his customers, and was free of any mistake that his conduct was legal.  Second, the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice.  A prior mortgage modification scheme is no worse or shocking than the charged scheme.  See United States v. Mercado, 573 F.3d 138, 142 (2d Cir. 2009).  Finally, the Defendant's contention that no jury instruction can address the jury's potential inclination to treat the prior mortgage modification scheme evidence as propensity evidence is unfounded.  "As the Supreme Court has frequently observed, the law recognizes a strong presumption that juries follow limiting instructions." United States v. Snype, 441 F.3d 119, 129-130 (2d Cir. 2006) (citing Zafiro v. United States, 506 U.S. 534, 540-41 (1993)). The facts here do not suggest an "overwhelming probability" that any such limiting instruction would require the jurors to perform the sort of "mental acrobatics" that would "evaporate[]" this strong presumption.  See United States v. Jones, 16 F.3d 487, 493 (2d Cir. 1994).  Rather, the inferences the jurors may and may not draw from the evidence are straightforward, and the Court will instruct them accordingly.

16

As this evidence is admissible under Rule 404(b) and, therefore, must be disclosed to Fiumano, the Court need not consider at this time whether it is also admissible as part of the Government's disclosures about CW-1's prior bad acts under Giglio, 405 U.S. 150, and its progeny.

### c. The Government May Present Both the Prior Mortgage Modification Fraud and the Alleged Threat Evidence in its Case-in-Chief

Generally, the Government must await the conclusion of the defendant's case to offer other act evidence to prove the defendant's intent or knowledge. Pitre, 960 F.2d at 1120. "[T]he policy behind postponing introduction of similar act evidence on the issue of intent until the defense has presented its case [is] to avoid prejudice to the defendant if he never really disputes the issue . . . ." United States v. Reed, 639 F.2d 896, 906-06 (2d Cir. 1987). In order "to take intent out of a case, 'a defendant must make some statement to the court of sufficient clarity to indicate that the issue will not be disputed.'" Pitre, 960 F.2d at 1119 (quoting United States v. Colon, 880 F.2d 650, 659 (2d Cir. 1989)). Absent such a statement, "where it is apparent that intent will be in dispute, evidence of prior or similar acts may be introduced during the government's case-in-chief." Id. at 1120.

In order to prove that Fiumano committed the crimes charged, the Government must prove that he acted with fraudulent

intent.  It is apparent, then, that Fiumano's intent will be in dispute.  Since Fiumano has not indicated to the contrary, barring any subsequent statement that the issue will not be disputed, the Government may offer evidence of the prior mortgage modification fraud and the alleged threat during its case-in-chief.

**2.  The Evidence That the Government Seeks to Preclude**

The Government seeks to preclude Fiumano from arguing that disclosures and contracts executed after the alleged misrepresentations occurred negate the misrepresentations. (Mem. 15-20.)  Fiumano indicates that he does not intend to argue that any disclosures are a complete defense, but he insists that he should be able to review the disclosures with the complaining witnesses and present the evidence of these disclosures to the jury to be considered with all other evidence. (Opp'n 5.)  The Government seeks also to preclude the Defendant from presenting so-called "good acts" evidence, _i.e._ that the Defendant also performed nonfraudulent work. (Mem. 20-21.)  The Defendant asks the Court to reserve its ruling on the "good acts" evidence at trial because "the government tries to paint this issue with too broad a brush." (_Id._)

### a. The Defendant May Not Argue the Disclosures As a Defense, Nor Is the Fact of the Disclosures Otherwise Admissible

The crime of wire fraud under 18 U.S.C. § 1343 does not require the Government to prove either the justifiable reliance or damages elements essential to fraud at common law. Neder, 527 U.S. at 24-25. The Government seeks to preclude the Defendant from offering evidence that PMG's customers executed contracts containing disclosures negating certain misrepresentations previously made to them as a defense to the fraud because such a defense is irrelevant to the charged crimes. Fiumano essentially concedes this argument and states that he does not intend to raise it as a complete defense. The Court is persuaded that a defense that the disclosures negated Fiumano's commission of the charged crimes is irrelevant. Such a defense could only show that the victims did not rely on the misrepresentations, and reliance is not an element of wire fraud that the Government must prove. Therefore, the Court will sustain the Government's objection to any attempt to use the disclosures as a defense for the charged crime.

Separately, without further explanation, Fiumano argues that he should be permitted to present the signed contracts and disclosures to the jury and to review these contracts and disclosures with the complaining witnesses. (Opp'n 5.) The Government does not take a position on this argument. In order

to be admissible, the contracts and disclosures must be relevant.  The Defendant offers no argument for their relevance, and the Court can find none.

In order to prove the charged crimes, the Government must prove a scheme to defraud, which includes establishing Fiumano's fraudulent intent and the materiality of his fraudulent statements. <u>Autuori</u>, 212 F.3d at 115.  The disclosures and contracts are not relevant to either materiality or intent.

Under the natural tendency test for materiality, the Court must focus on the potential effect of the false statement when it is made. <u>Anti-Discrimination Ctr.</u>, 668 F. Supp. 2d at 569. The Government proffers that the contracts and disclosures were signed after the oral misrepresentations were made to the victims. (Mem. 18.)  Therefore, the victims' execution of contracts and disclosures after the misrepresentations does not tend to make more or less probable any potential effect of the false statement when it was made.  Accordingly, the existence of the contracts and disclosures are irrelevant to the materiality of Fiumano's false statements.

Similarly, the disclosures and contracts are irrelevant to Fiumano's fraudulent intent.  The fact that the victims subsequently executed contracts and disclosures fails to suggest in any way Fiumano's mental state when he made the misrepresentations to his victims.  The Defendant fails to

identify how a victim's later act could tend to make a defendant's earlier culpable mental state more or less probable. Consequently, the existence of the contracts and disclosures are irrelevant to Fiumano's fraudulent intent.

Finally, Fiumano's assertion that he "should be allowed to review these contracts and disclosures with the complaining witnesses," (Opp'n 5), suggests that he plans to make some form of "unreasonable victim" argument. See United States v. Thomas, 377 F.3d 232, 243 (2d Cir. 2004) (describing the "unreasonable victim" argument as one where a defendant argues that "the foolishness of [the victim]'s belief in [the defendant]'s scheme somehow vitiates [the defendant]'s fraudulent intent"). Raising the contracts and disclosures with the complaining witnesses puts the victims' mental states at issue and shifts the focus from Fiumano's intent to what the victims understood. In addition to being squarely rejected by the Second Circuit in Thomas, such an argument is irrelevant to Fiumano's fraudulent intent, which appropriately "focuses on the violator, not the victim." Thomas, 337 F.3d at 243. Therefore, the Defendant is precluded from offering the contracts and disclosures into evidence and reviewing these contracts and disclosures with the complaining witnesses.

**b.   Because the Defendant Has Not Proffered Any Specific "Good Acts" Evidence That It Intends to Present, the Court Must Reserve Its Decision at This Time**

Finally, the Government seeks to prevent the Defendant from introducing nonfraudulent work allegedly performed by PMG, but concedes that it is currently not aware of any potential defense witnesses or exhibits or the nature of Fiumano's case. (Mem. 20-21.)  The Defendant agrees, "[a]s a general proposition, . . . that 1,000 successful loan modifications would not be relevant as to whether 5 such modifications were fraudulent." (Opp'n 5.)  The principle is rather elementary.  A defendant charged with robbing a bank in Manhattan on April 22 cannot offer as evidence to disprove the charged crime that he did not rob the bank's branches in Brooklyn or the Bronx on April 22 or that he did not rob the Manhattan branch on April 20, 21, 23, and 24, because this evidence is irrelevant to the charge that he robbed the Manhattan bank on April 22. See, e.g., United States v. Williams, 205 F.3d 23, 34 (2d Cir. 2000) (affirming a district court's decision to preclude as irrelevant past trips to Jamaica where the defendant, charged with importing cocaine, did not engage in drug activity and holding that "[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions" (quoting United States v. Scarpa, 897 F.2d 63, 70 (2d Cir. 1990)) (second alteration in original)); United States v. Walker, 191 F.3d 326,

336 (2d Cir. 1999) ("Whether [the defendant] had prepared other, nonfraudulent applications was simply irrelevant to whether the applications charged as false statements were fraudulent.").

Neither the Government nor the Defendant identify specific acts that should be precluded, thus the Court will reserve its decision on whether any evidence the Defendant seeks to introduce is, in fact, inadmissible "good acts" evidence.

### Conclusion

For the reasons above, the Government's motion in limine is granted in part.  It may offer the prior mortgage modification scheme evidence as intrinsic evidence of the crime charged.  The Government may also offer the alleged threat evidence, modified to substitute any reference to sexual assault with "interpersonal issue."  In accordance with Rule 404(b), the Government shall provide reasonable notice to the Defendant of the general nature of the alleged threat evidence that it intends to offer at trial.  The Court will provide an appropriate limiting instruction for that evidence at the Defendant's request.  The Government may introduce both categories of evidence in its case-in-chief so long as the Defendant does not make a clear statement taking the issue of knowledge or intent out of the case prior to the introduction of the evidence.  Fiumano is precluded from raising the fact of the disclosure and contracts as a defense to the charged crimes and

23

from otherwise introducing the contracts and disclosures into evidence.

The Court reserves decision on that part of the Government's motion in limine involving whether specific evidence would qualify as impermissible "good acts" evidence.

SO ORDERED.

Dated:    New York, New York
          April 25, 2016

                                    John F. Keenan
                              United States District Judge